The errors assigned are substantially the same as those we considered in the original appeal.
First. The objection that the judgments upon which this suit is based were invalid or irregular and, therefore, were not liens upon the land, is clearly untenable. There is nothing on the face of the judgments to show their invalidity, but, on the contrary, everything to show that they were rendered according to the course and practice of the court. These judgments are more certain and formal than were those in Davis v.Shaver, 61 N.C. 18, and Sharpe v. Rintels, ibid, 34, which were held to be sufficient. See, also, Logan v. Harris, 90 N.C. 7; Ferrell v.Hales, 119 N.C. 199; Taylor v. Ervin, ibid., at p. 277. In the last three cases the Court says that while there should be some entry showing that a judgment was rendered, a simple memorandum by the clerk, such as the word "judgment," is sufficient for the clerk to make the formal entry afterwards, by stating the amount of the judgment, or the principal, with the date from which interest runs and the costs, which are itemized, and the title of the case. What else could be inserted in the entry in order to make it more formal? The entries give all necessary information as to what the court did and are certain in every particular. If there was any mere irregularity, the defendant should have proceeded (688) by motion in the original cause in Beaufort Superior Court, as stated in the former opinion. He cannot attack the judgment collaterally in Pitt Superior Court on that ground.
Second. As to whether the plaintiffs in those judgments, as their names appear on the record, were entitled to recover, is a question which was foreclosed by the judgments. The defendant appeared by attorney in the actions, demurred in one case and also answered, and answered in the other case; and being thus in court, if there was any error in the judgments of the court, the defendant should have appealed; and if any irregularity — that is, if the judgments were taken contrary to the course and practice of the court — the remedy was equally plain, viz., a motion in the causes to set them aside. The provisions of Revisal, sec. 572, as to the judgment roll should of course be complied with, but they are directory, and the clerk's failure to "attach together" the papers, that is, process, pleadings, and judgment, etc., did not vitiate the judgment, which was entered of record and is regular in form. The papers were all on file, and the mere failure, if there is any proof of it here, to fasten them together surely should not invalidate a solemn and formal judgment of the court. The case of Dewey v. Sugg, 109 N.C. 335, does not so hold, as another question was involved, but Chief Justice Merrimon does intimate strongly, in accordance with the view we have expressed, that where the entries on the judgment docket show the important or material and constituent facts, to wit, names of the parties, relief granted, *Page 761 
date of rendition, and time of docketing, the judgment will be complete. Our conclusion is that the judgments are valid liens upon the land. It was not necessary that copies of the judgment rolls should be filed in the Superior Court of Pitt County. Wilson v. Patton, 87 N.C. 318. The judgments docketed in Pitt County are liens on the land in that county, and not those docketed in Beaufort County.
Third. We deem it unnecessary to say much about the interest of Henry C. and Edward Parsons in the judgments. Mr. Satterthwaite appears, on the face of the docketed judgments, to be the sole owner of one and the beneficial owner of the other judgment, and his administrator, therefore, is entitled to recover the amount thereof. Defendants cannot impeach the judgments collaterally by showing that the plaintiffs named in them are not the owners, when the court has adjudged that they are. There is no relation of attorney and client to be dissolved by the death of the attorney, so far as the judgments show, and it is too late to raise any such question now in this collateral proceeding. It appears from the judgment that Mr. Satterthwaite became indorsee of one and the beneficial owner of the other. The court so declared and adjudged, and we are now bound by the judgment, which is conclusive as to those matters. The defendant will be protected by paying the money into court. But we have sufficiently discussed this (689) phase of the case in the former opinion.
The Revisal, secs. 475, 476, 477, requires an objection because of a defect of parties to be taken by demurrer or answer, as the case may require. If it is so taken and the court rules erroneously in regard to it, the remedy is by appeal and not by a collateral attack on the judgment after it is rendered. It does not concern the debtor who receives the money, if he is acquitted of liability. Newsom v. Russell, 77 N.C. 277. The Parsons may come in by leave of the court and make themselves parties, if they are beneficially interested in the judgments, and are not already parties. They are proper but not necessary parties, as the facts now appear.
Fourth. There is no averment by the representatives of the defendant in the judgments that they have, in fact, been paid. The statute of limitations (Revisal, sec. 391) has taken the place of the former statute of presumptions (Rev. Code, ch. 65, sec. 18) in respect to judgments. The law in regard to laches and stale claims and lapse of time does not apply here, for the plaintiff in the judgment could not proceed to enforce it, as he was forbidden by the statute to do so. Speaking of the presumption of payment, as one of fact, under the old law, the Court by Chief JusticeSmith said in Long v. Clegg, 94 N.C. 763, 769: "Now, is it not manifest that the plaintiff could not sue or collect his bond at all during the time there was no administrator of the deceased obligor? *Page 762 
Did not the reason of the rule of presumption of payment cease when the creditor could not collect his bond? Was not such inability to sue quite as strong and as good a cause to destroy the presumption of payment as that of the continued insolvency of a debtor, from the time the right of action accrued until the end of ten years? The latter cause has always been held to be sufficient to repel the presumption. It is said that the plaintiff might have sued the intestate of the defendant before his death, and so he might, but he was not bound to do so — no presumption of payment had arisen then; and as he did not sue, surely he ought not to lose his debt because he could not for ten years afterwards. Such injustice is not the spirit of the rule of presumption in question. It is said, also, that in such cases when the time begins to run nothing can interpose to prevent the continuance of such lapse. I cannot accept this view as correct. The very nature of the principle of such presumption of payment contravenes it. The presumption itself implies that it may be rebutted by any interposing fact that destroys its reasonableness and shows that it is unfounded in truth. The presumption of payment arising from lapse of time is in the respect mentioned different from a statute of limitations. The latter is inflexible and unyielding; it ceases to operate only in the way and for the cause prescribed by the statute."
(690) The plaintiff in the judgment could not issue process thereon during the existence of the homestead, and therefore it would not be just to raise any presumption against him from his inaction. Besides, the law suspended the operation of the statute of limitations during said period. Revisal, sec. 685, Pell's Ed., p. 362.
Fifth. As to the statute of limitations and the duration of the lien of the judgments, counsel for the defendant with his usual frankness admitted that if Bevan v. Ellis, 121 N.C. 224, is not overruled, his position is untenable. We do not see why the decision in that case should be disturbed, as it is a correct exposition of the statute. It was there decided that the lien of a judgment on land, which had been allotted as a homestead, does not cease at the expiration of ten years from the rendition and docketing of the judgment, but continues so long as the homestead exists, not withstanding a sale and conveyance of the land, citing Stern v. Lee,115 N.C. 426, and other cases. The statute declares that a judgment shall not be affected by lapse of time, or the statute of limitations, during the existence of the homestead (Revisal, sec. 685, Pell's Ed., p. 372), but that the running of the statute of limitations shall be suspended during said time, and there is nothing in Sash Co. v. Parker, 153 N.C. 130, that militates against this view. It was there said that the law, in this aspect, had at least been settled by Public Laws 1905, ch. 111 (Revisal, sec. 686), which provides that the *Page 763 
statute begins to operate when the homestead is conveyed, as the creditor can then proceed against the land. The decision in that case was based upon this change in the law, but the statute was in force only from the date of its ratification, as there is a proviso in it that it shall not have "any retroactive effect." It would not, therefore, bar plaintiff's right or impair the lien of his judgments, as it can by its own terms only operate prospectively. The Legislature merely changed the law, as it had the right to do, but it is admitted in the case cited that this Court had just previously declared the law, as then existing, to be otherwise. It may be that the act of 1905 would have operated prospectively anyhow, or if the proviso had not been inserted, but the Legislature, believing that if it was construed to operate retrospectively great injustice might result, provided expressly that it should have no such effect. It will be observed that in Bevan v. Ellis, supra, the Court treated the word "payments" in the act of 1885, ch. 359, as meaning "judgments," and the context shows that it could not well have any other meaning, and that act was regarded as suspending the running of the statute of limitations during the existence of the homestead. We are therefore of the opinion, as we were at the former hearing, that the act of 1905 does not so affect this case as to bar the judgments or destroy their liens. We should, perhaps, add that under the view of the facts taken by the Bernards the judgments are not barred, nor have the liens (691) expired, as even, in that case, the statute ceased to run when the original summons (of plaintiff George H. Brown, administrator) was issued on 8 May, 1913.
Sixth. The next question is the one of subrogation. If Mrs. Bernard paid $600 to R. A. Tyson, assignee and owner of the senior judgment entitled W. M. B. Brown, admr. of Richard Short, v. J. J. Perkins, and thereby discharged the lien or encumbrance of the judgment to that extent, it would seem that in equity she would be subrogated to Tyson's rights under the judgment pro tanto, so far as she has paid on the same, unless there was some agreement in respect thereto or other matter which would prevent the application of this equitable doctrine. Liles v. Rogers, 113 N.C. 197; 37 Cyc., 363-384; Publishing Co. v. Barber, 165 N.C. 478. We said as much before, and directed issues to be submitted to the jury to ascertain the facts in regard to this alleged payment and the nature of it. The jury had found no facts, as the court refused to submit any issues. We will not suggest the form of the issues, but leave the court free to adopt those which may at the next trial seem proper under the circumstances. The eleventh issue tendered by the Bernards appears to assume, in the first part of it, the existence of a fact which is disputed. This defect may easily be remedied. *Page 764 
It would be useless to prolong this discussion, as all other matters, and even those considered in this opinion, are fully covered by the former opinion in the case, to which we refer. The appellant has not raised any material questions in his petition except those we have considered herein.
The question has been raised by the defendants as to whether the persons named as interpleaders are the surviving partners of C. S. Parsons Sons, who, it seems, claim to be the real or beneficial as distinguished from the legal owners of both said judgments. It may be that F. B. Satterthwaite was acting merely as attorney for C. S. Parsons Sons, and the jury have found, in response to the sixth issue, that C. S. Parsons Sons are the equitable owners of both judgments. If any question is made as to the interpleaders, Edward Parsons and C. S. Parsons, being the surviving members of the partnership of C. S. Parsons Sons, and as such entitled to the proceeds of the two judgments in case of their collection, an issue should be submitted, if the matter is contested, in order that there may be a definite finding upon the question. This, though, will not affect the right of the nominal plaintiffs in the judgments, who in law also are the legal owners thereof, to recover thereon in this action.
The objections of the defendant Perkins to the testimony of R. A. Tyson and to the introduction of the assignment can be renewed at the next trial, and also the objection to issues tendered by the (692) Bernards. Nothing has been decided that deprives him of this right, nor do we see why the defendants may not show, if they can, any fact that will defeat the equity of subrogation which the Bernards assert, as that matter has been left open by the decision of this Court. When the facts are fully developed, the rights of all parties may be determined. As it may be found that the W. M. B. Brown judgment is still in force and subsisting as a prior lien on the lands, that is, both parcels, it may be that the proceeds of sale of the unsold Perkins land may be exhausted in paying that judgment, and the question as to the right of Mrs. Bernard's heirs to have the Perkins land sold first may not arise or become a practical one. It was considered before upon the theory only that as between the plaintiffs and the Bernards, if the other and senior judgment was out of the way, the Bernards would be entitled to this equity.
The plaintiff in this suit, George H. Brown, has no other interest than as administrator of Mr. Satterthwaite to collect the amount due on the judgments for the benefit of his trust and in discharge of his official duty, and he will hold it for the benefit of the parties to whom the fund belongs, after reserving any sum properly chargeable against it.
We see no reason for a change of the former judgment.
Petition denied. *Page 765 
BROWN, J., did not sit in this case.
Cited: Watters v. Hedgpeth, 172 N.C. 312 (9c); Chandler v. Jones,172 N.C. 572 (10c); Marler v. Golden, 172 N.C. 825 (6c); Kirkwood v. Peden,173 N.C. 461 (9c); McDonald v. Howe, 178 N.C. 258 (2c); Casket Co. v.Wheeler, 182 N.C. 462 (10c); Grantham v. Nunn, 187 N.C. 398 (10c);Jeffreys v. Hocutt, 195 N.C. 342 (10c).